A. J. ·Roper's Heirs et al *v.* A. J. Roper's Executors.

**Executors and Administrator—Violation of Authority.**
    An administrator who, through laches, losses to the estate, assets, being a sale of personal property not authorized by the will or court, will be held personally liable therefor.

**Same.**
    Regardless of whatever good faith they may have shown, the transcending of their legal powers and legal duties, will render them liable.

APPEAL FROM FULTON CIRCUIT COURT.

November 25, 1869.

Opinion of the Court by Judge Williams:

A. J. Roper died testate, in Fulton county, Kentucky, where his executors qualified, after which, without any order of court, they sold a slave in Obion county, Tennessee, to T. M. Pierce, on three months' time, taking G. M. Pierce as security; said debt not being paid and being secured by three notes, the executors took judgment on all before a justice of the peace, in said Obion county, March 23, 1861, which were "stayed by L. M. Clay," and thus matters remained until September 10, 1866, when executions were taken out and return no property found.

Pierce, the debtor, remained good until the destruction of his

slave property by the war, and Clay until he conveyed his land, about September 5th or 6th, 1866.

Civil government was set up and a sheriff appointed in Obion county, in June, 1865.

The county court of Fulton first charged said executors with the value of said slave in settlement, but in a subsequent one allowed them a credit therefor.

The legatees and heirs of the testator appealed therefrom to the circuit court, which also allowed said credit, and they have now appealed to this court.

The executors acted no doubt in good faith in the sale of said slave, having sold him as is conceded of his vicious and ungovernable disposition. The policy of our statutes, however, was to preserve the slave estate for the legatees and heirs, unless the will authorized the sale, or a court of competent jurisdistion should so order, or unless it should be necessary for the payment of the decedent's debts, neither of which appear herein, therefore, whilst the object was a good one, neither the sale nor the place where sold can be strictly and legally justified.

By section 4, article 1, chapter 93, 2 Stant., Revised Statutes, 359, it is enacted that:

> "Slaves shall not be sold by the personal representative, unless for the want of other assets, it be necessary to pay debts of decedent."

Other statutes authorize a sale by order of court.

Having made the sale, however, on credit, in Tennessee, and the political disturbances of the United States, particularly of the Southern states, having broken out, it was doubtless highly imprudent to collect the debt in such common currency as was in general use at that time. Tennessee had not seceded when the judgment was rendered, but had before the "stay" was out, hence it could then only be collected in such currency as was common to the "Confederacy."

But after the rebellion was over and civil government, under the United States, had been restored, it was near fifteen months before execution was taken out, or any legal steps taken to enforce these judgments, and the proof shows that Clay, the security, remained good until within a few days of the issual of the exe-

cutions, when he made the conveyance of his land, probably, to defeat these very liabilities.

This laches by the executors cannot be legally justified on any hypothesis that the sheriff of the county was insolvent and unreliable, and therefore they preferred to delay the collection of the debt to risking him. Had the executors pursued the legal remedies and the recovery had been lost because thereof, or from having gone into the hands of a public functionary, this would have been a full justification of any asserted liability because of the loss in his hands, but having chosen to rely upon the debtors, rather than the collecting officer, the executors must abide the legal consequences of their option. The proof, however, in this case leaves little room to doubt that had they at the earliest reasonable time, after the restoration of civil government, taken out executions and placed them in the sheriff's hands, the debts would have been collected and paid over, for whatever may have been the individual situation of the sheriff, he seems to have promptly paid over all the money collected by him as an officer.

The whole case then shows, first, a violation of legal duty in the sale of the slave without authority first obtained.

Next, in selling the slave in Tennessee, and, thirdly, in not promptly pursuing the legal means of collecting the debt, and for these reasons the executors must answer to the appellants for the loss of said slave, however hard may be the case in its moral aspect, and with whatever good faith they may have acted, for they have transcended their legal powers and violated their legal duties, and for these things we cannot doubt their legal responsibility.

Wherefore, the judgment is reversed, with directions for further proceedings consitsent with this opinion, and the correction of the county court settlement, which allowed the executors credit for the price of said slave.

*Rodman,* for appellants.

*James,* for appellees.